UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:22-cv-00447-FDW-DCK

| | | |
|---|---|---|
| W.M. BARR & COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| DUMOND, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

THIS MATTER is before the Court on Defendant's Motion to Dismiss, and in the alternative, to Transfer to the Eastern District of Pennsylvania, (Doc. No.  14).  The Court originally set a hearing on this motion, as well as Plaintiff's pending Motion for a Preliminary Injunction, (Doc. No. 7).  (Doc. No. 24)  However, in reviewing the pleadings and applicable law in preparation for the hearing, it became clear to the Court that the facts and legal contentions are adequately presented in the materials before this Court and argument would not aid the decisional process.  For the following reasons, the Court DENIES IN PART and GRANTS IN PART Defendant's Motion.

I.      Background

According to the Complaint, Plaintiff is a Tennessee organization with its principal place of business in Memphis, Tennessee.  Plaintiff manufactures, markets, and sells specialty products in the cleaning, household, home improvement, anti-microbial, and automotive industries. Defendant is a New York corporation with its principal place of business in Downingtown, Pennsylvania, where its physical offices, operations, and assets are located.  Defendant also

1

manufactures, markets, and sells surface preparation and cleaning products through a nationwide network of distributors.  Defendant is a direct competitor of Plaintiff.

Plaintiff commenced this action alleging trade dress and trademark infringement, false designation of origin and unfair competition pursuant to the Lanham Act, 15 U.S.C. § 1051, <u>et seq.</u>; unfair and deceptive trade practices under the laws of the State of North Carolina pursuant to N.C. Gen. Stat. § 75-1.1, et seq.; and unfair competition under North Carolina common law.  In short, Plaintiff contends Defendant is engaging in unlawful conduct in knowingly and intentionally adopting and using a trade dress that is identical to Plaintiff's federally registered orange product color trade dress and confusingly similar to Plaintiff's related CITRISTRIP® trademark and product packaging trade dress.   (Doc. No. 1).

In response to service of the Complaint, Defendant filed the instant motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and asserts this Court lacks personal jurisdiction over it.  Defendant also moves alternatively for transfer of this case to the United States District Court for the Eastern District of Pennsylvania pursuant to pursuant to 28 U.S.C. § 1404(a).  Defendant summarizes its connection to and operations in North Carolina, supported by the affidavit of its President Rick Grear, as the following:

> Dumond is not now and has never been authorized to transact business in North Carolina. ([Declaration of Rick Grear (Doc. No. 16) ¶ 8].) Dumond is not registered as a foreign entity to transact business in North Carolina, or anywhere else in the United States. (<u>Id</u>.) Dumond does not maintain any offices, have any registered agents or employees, pay any taxes, have any bank accounts or phone listings, or rent or own any real or personal property in North Carolina. (<u>Id</u>. ¶¶ at 8–10.) Dumond also has no distributors in North Carolina. (<u>Id</u>. ¶ 9.)

> Dumond has never targeted the North Carolina market. (<u>Id</u>. ¶ 10.) Besides individual, one off sales, Dumond has no recurrent contracts with anyone in North Carolina. (<u>Id</u>. ¶ 11.) In 2021, sales of Dumond's Citrus Paint Remover totaled approximately $13,064 in North Carolina. (<u>Id</u>. ¶ 12.) From January through

September of 2022, the sales totaled approximately $21,910. (Id. ¶ 13.) All those sales were made and fulfilled through Amazon.com. (Id. ¶¶ 12, 13, 18.)

By comparison, over 97% of Dumond's total Citrus Paint Remover sales occurred outside North Carolina for that same period. (Id. ¶ 14, 15.) Dumond's total U.S. sales for its Citrus Paint Remover was approximately $469,549 in 2021 and $741,105 in 2022. (Id.) Sales to North Carolina based purchasers comprised less than 3% of that total each year. (Id.) The Dumond website also features a Citrus Paint Remover product page. (Id. ¶ 17.) The "shopping cart" feature of this website is hosted by Shopify. (Id.) Dumond has also made approximately $227 in online sales for its Citrus Paint Remover through the Dumond Shopify website for the period from January 1, 2021 through September 30, 2022. (Id. ¶ 18.)

Dumond has never directed advertising, marketing, or web activity at North Carolina. (Id. ¶10.) Neither the Amazon product page, nor Dumond's website's product page, contain anything targeting North Carolina. (Id. ¶¶ 16, 17.) Dumond's Shopify-hosted product page states that the Citrus Paint Remover is "available only in USA" and permits users to "ship to" any state in the U.S. (Id. ¶ 17.) But from January 1, 2021 through September 30, 2022 Dumond did not make any such sales to North Carolina. (Id. ¶ 18.) In sum, Dumond's only relevant "connection" to North Carolina is that, over two years, individual purchasers bought and shipped less than $35,000 worth of Citrus Paint Remover to the state via Amazon.

(Doc. No. 15, pp. 8-9). Plaintiff does not substantively dispute Defendant's characterization of its activities in North Carolina but objects to the motion in its entirety arguing that these contacts, as well as other activity directed to North Carolina, are sufficient to confer both general and specific personal jurisdiction in this case. Plaintiff provides the following additional summary of contacts, which it supports with exhibits and affidavits attached to the opposition brief:

Defendant admits to nearly 1,400 sales of the Infringing Product in the course of 21 months to consumers in North Carolina—which is nearly 1,400 potential instances of consumer confusion in North Carolina. The Infringing Products infringe Barr's trademark rights, and thus are at the core of Barr's claims. Accordingly, there are nearly 1,400 reasons why Defendant is subject to specific personal jurisdiction in this forum, and it only takes one.

Additionally, the 'Find Our Stores' functionality on Defendant's own website demonstrates its 'systematic and continuous contacts' with this forum; i.e., approximately 200 retail locations across the state carrying Defendant's portfolio of products, including 25 locations in the Charlotte area alone. Several of

3

Defendant's retail partners only operate in North Carolina, evidencing Defendant's intent to direct sales into North Carolina.

(Doc. No. 2, p. 7).  This matter has been fully briefed and is ripe for review.

## II.      Standard of Review

The standards of review for considering a motion to dismiss for lack of personal jurisdiction and a motion to transfer venue are well settled.

### A.  Personal Jurisdiction

Plaintiff bears the burden to make a prima facie showing of this Court's personal jurisdiction over Defendant, and the Court must take all disputed facts and reasonableness inferences in Plaintiff's favor.  Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 396 (4th Cir. 2003).  A recent decision by a distinguished colleague in the Eastern District of North Carolina eloquently summarized the applicable law governing the Court's inquiry when a defendant challenges personal jurisdiction:

> "A lawful assertion of personal jurisdiction over a defendant requires satisfying the standards of the forum state's long-arm statute and respecting the safeguards enshrined in the Fourteenth Amendment's Due Process Clause." Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012); Carefirst, 334 F.3d at 396 ("Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law."). North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4(1)(d), "permits the exercise of personal jurisdiction over a defendant to the outer limits allowable under federal due process." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558-59 (4th Cir. 2014) (citing Dillon v. Numismatic Funding Corp., 291 N.C. 674, 231 S.E.2d 629 (1977)). Thus, the court's "statutory inquiry merges with [its] constitutional inquiry." Carefirst, 334 F.3d at 396; Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001) (explaining that because "North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause, . . . the dual jurisdictional requirements collapse into a single inquiry").

4

"A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" Carefirst, 334 F.3d at 397 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). This standard can be satisfied "through two different approaches—by finding specific jurisdiction ... or by finding general jurisdiction." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711 (4th Cir. 2002); Universal Leather, 773 F.3d at 559 ("[T]here are two paths permitting a court to assert personal jurisdiction over a nonresident defendant.").

General jurisdiction requires "demonstrating the defendant's continuous and systematic contact with the forum state," Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 198 (4th Cir. 2018), and "extends to any and all claims brought against a defendant." Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., —— U.S. ——, 141 S. Ct. 1017, 1024, 209 L.Ed.2d 225 (2021). On the other hand, specific jurisdiction requires "demonstrating that the defendant purposely established minimum contacts in the forum state such that it should reasonably anticipate being haled into court there on a claim arising out of those contacts," Sneha Media, 911 F.3d at 198, and reaches only the specific "claims [that] . . . arise out of or relate to the defendant's contacts with the forum." Id.

Yacht Basin Provision Co. v. Bates, No. 7:21-CV-117-FL, 2022 WL 2651845, at *5 (E.D.N.C. July 8, 2022) (cleaned up).

B.  Transfer of Venue under Section 1404(a)

Section 1404 of Title 28 of the United States Code allows "a district court [to] transfer any civil action to any other district where it might have been brought" "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); In re Carefirst of Maryland, Inc., 305 F.3d 253, 255 (4th Cir. 2002) ("Section 1404(a) authorizes inter-district or inter-division transfers for the convenience of parties and witnesses, in the interest of justice[.]").  A district court may do so even where the court lacks personal jurisdiction over the defendants. See generally Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his

5

case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not[.]"); 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3827 (3d ed. 2010) (explaining that "[t]he correct way to achieve" transfer when "venue is proper in the district of origin" but "personal jurisdiction cannot be obtained over the defendant in that district" "is to apply the Goldlawr principle to transfers under Section 1404(a)"). The question of whether to transfer pursuant to § 1404 is committed to the discretion of the district court, which analyzes a motion to transfer based on an "individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (cleaned up).

In evaluating whether to transfer a case to another jurisdiction under § 1404, courts in this district weigh eleven factors to determine whether a defendant has its burden to transfer venue. Scenic Mktg.Grp., LLC v. S. Home Med. Equip., Inc., No. 3:11-cv-00551, 2012 WL 113664, at *1 (W.D.N.C. Jan 13, 2012). The eleven factors are:

> (1) the plaintiff's initial choice of forum; (2) the residence of the parties; (3) the relative ease of access of proof; (4) the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; (5) the possibility of a view; (6) the enforceability of a judgment, if obtained; (7) the relative advantages and obstacles to a fair trial; (8) other practical problems that make a trial easy, expeditious, and inexpensive; (9) the administrative difficulties of court congestion; (10) the interest in having localized controversies settled at home [and] the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11), the avoidance of unnecessary problems with conflict of laws.

Com. Equip. Co., Inc. v. Barclay Furniture Co., 738 F. Supp. 974, 976 (W.D.N.C. 1990).  A defendant "carries a particularly heavy burden," as "[a] court should not disturb the plaintiff's choice of forum unless the moving party demonstrates that the balance of convenience to the parties and witnesses and the interests of justice weigh heavily in favor of the transfer to another

6

district." Id. (citations omitted).  The mere shifting of inconvenience from one party to another will not satisfy a defendant's burden. Id.; see also Uniprop Manufactured Hous. Cmtys. Income Fund II v. Home Owners Funding Corp., 753 F. Supp. 1315, 1322 (W.D.N.C. 1990) (noting that "if the equities lean but slightly in favor of the movant after all factors are considered," transfer is still not appropriate).

III.     Analysis

A.     Personal Jurisdiction

The Court summarily concludes Plaintiff has failed to meet its burden to show this Court has general jurisdiction over Defendant.  Defendant is not incorporated in North Carolina, nor does it have its principal place of business in North Carolina. Plaintiff has not presented any other facts to indicate that Defendant is "essentially at home" in North Carolina. See generally, Daimler AG v. Bauman, 571 U.S. 117 (2014); Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011).  Therefore, general jurisdiction does not exist over Defendant.

As to specific jurisdiction, this Court also summarily concludes that Plaintiff has failed to demonstrate specific jurisdiction over Defendant, and the Court adopts the reasons stated and authorities cited in Defendant's pleadings as persuasive on this issue.  (See Doc. Nos. 15, 27).   In short, the record before the Court indicates Defendant has not purposefully availed itself of the privilege of conducting activities in North Carolina.  See Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016) ("In the business context, these factors include whether the defendant maintains offices or agents in the forum state, owns property in the forum state; reached into the forum state to solicit or initiate business; deliberately engaged in significant or long-term business activities in the forum state; or made in-person contact with the resident of the forum in the forum

state regarding the business relationship.). The record fails to show Defendant satisfies any of these Purdue factors.

The Fourth Circuit's decision Fidrych v. Marriott International, Inc., 952 F.3d 124 (4th Cir. 2020), is also particularly instructive here, especially because Plaintiff relies heavily on Defendant's website to supports its arguments regarding personal jurisdiction.  The Fourth Circuit explained in Fidrych:

> While Marriott obviously uses its website to engage in commercial transactions, the website does not target South Carolina residents for commercial transactions any more than it targets any other state. Instead of targeting any particular state, the website makes itself available to any one who seeks it out, regardless of where they live. In our view, the mere fact that the website is accessible in a given state does not mean that Marriott is targeting its activities at that state.

Id. at 139-41 (citing ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997) (rejecting claim of specific jurisdiction where defendant did not direct its activities at South Carolina but instead "focused its activities more generally on customers located throughout the United States and Canada without focusing on and targeting South Carolina")).  The Fidych court also considered the interactivity of a website, noting that "the level of interactivity of a website like Marriott's is not enough, on its own, to make the website a sufficient basis to support the exercise of specific jurisdiction," and highlighting that the "website is not used to create a continuing, *back-and-forth relationship* between Marriott and the website user."  952 F.3d at 142 (emphasis added).  The court cautioned, "[I]f we attached too much significance on the mere fact of interactivity, we risk losing sight of the key issue in a specific jurisdiction case—whether 'the defendant has purposefully directed [its] activities at residents of the forum.'"  Id. (quoting Burger King, 471 U.S. at 472, 105 S.Ct. 2174 (alteration in original)).  The Court rejects Plaintiff's arguments for the reasons stated in Fidrych.

Although it is undisputed that North Carolinians have purchased Defendant's product through third parties, the evidence before the Court fails to demonstrate Defendant's purposeful availment of the privilege of operating in North Carolina.   "[U]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum [s]tate to justify an assertion of jurisdiction."   Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417 (1984); In re Celotex Corp., 124 F.3d 619, 629 (4th Cir. 1997) (affirming rejection of "a rule [that] would subject defendants to judgment in locations based on the activity of third persons and not the deliberate conduct of the defendant, making it impossible for defendants to plan and structure their business contacts and risks"). Additionally, a defendant's contacts must be "with the forum [s]tate itself," not merely "contacts with persons who reside there."   Walden v. Fiore, 571 U.S. 277, 284-85 (2014) (explaining that the connection between the defendant and the forum "must arise out of contacts that the defendant himself creates with the forum [s]tate").   For example, the United States Court of Appeals for the Fourth Circuit has rejected evidence of "sales . . . initiated by . . . customer[s]" from the forum state as constituting cognizable evidence of a defendant's requisite minimum contacts with a forum state.  Fed. Ins. Co. v. Lake Shore Inc., 886 F.2d 654, 658 (4th Cir. 1989).  Accordingly, the limited sales of Defendant's allegedly infringing product in North Carolina by third-party vendors is insufficient under this record to confer specific jurisdiction.

Because neither general nor specific jurisdiction may be exercised in this case, granting Defendant's motion to dismiss is but one available remedy here.

B.     Transfer of Venue

While dismissal of the Complaint is appropriate where personal jurisdiction is lacking, courts within the Fourth Circuit favor transfer over dismissal of an action.  Cirillo v. Citrix Sys. Inc., No. 320CV00540RJCDSC, 2021 WL 308597, at *4 (W.D.N.C. Jan. 29, 2021) (citing Continental Cas. Co. v. Argentine Republic, 893 F. Supp. 2d 747, 754 (E.D. Va. 2012)).  And, where the parties have already fully briefed a motion for preliminary injunction, the Court finds that transfer—and not dismissal—is the more appropriate remedy in this case.

Here, transfer to the United States District Court for the Eastern District of Pennsylvania would be for the convenience of parties and in the interest of justice, and the parties agree this action could have been brought originally there. This Court's lack of personal jurisdiction can be cured by transfer to the United States District Court for the Eastern District of Pennsylvania because all indications are that Defendant would be subject to general jurisdiction there since its principal place of business is located in Dowingtown, Pennsylvania.

These reasons, as well as consideration of the § 1404 factors, favor of transfer.  For purposes of analysis, the Court categorizes the eleven factors typically applied within this district as: (1) Plaintiff's Choice of Forum, (2) Convenience of the Parties, (3) Witness Convenience and Access, and (4) Interest of Justice.  Notably, a court's decision to transfer depends on the particular facts of the case because § 1404(a) "provides no guidance as to the weight" that courts should afford each factor.  Samsung Elecs. Co., LTD. v. Rambus, Inc., 386 F. Supp. 2d 708, 716 (E.D. Va. 2005) (citing 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3847 at 370).

1. Plaintiff's Initial Choice of Forum

"Plaintiff chose North Carolina as its choice of forum, and courts have given great weight to this factor of the analysis." <u>Scenic Mktg. Grp.</u>, 2012 WL 113664, at *1; <u>see also Collins v. Straight, Inc</u>., 748 F.2d 916, 921 (4th Cir. 1984). When the plaintiff selects a foreign forum and the cause of action bears little relation to that forum, however, such decision is not entitled to the same deference.  <u>See</u> <u>JTH Tax, Inc. v. Lee</u>, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007); <u>see also</u> <u>DiFederico v. Marriott Int'l, Inc.</u>, 714 F.3d 796, 803 (4th Cir. 2013).  Even then, in trademark cases, the plaintiff's choice of forum may still be entitled to deference when the plaintiff is conducting business in that forum.  <u>See</u> <u>Kiss My Face Corp. v. Bunting</u>, No. 02CIV2645, 2003 WL 22244587, at *4 (S.D.N.Y. Sept. 30, 2003) ("Where there is ongoing business activity in the chosen forum, however, plaintiff's choice of forum is given more deference than it would if the connection to this forum were truly de minimis.") (quotation omitted); cf. <u>PlayVision Labs, Inc. v. Nintendo of Am., Inc.</u>, No. 3:14-CV-312-GCM, 2014 WL 6472848, at *2 (W.D.N.C. Nov. 18, 2014) (ordering transfer of a case when "nothing to do with the development or manufacture" of the controversy occurred in North Carolina) (emphasis added).

 Here, Plaintiff chose this forum "because, even though it is a Tennessee company, many of the relevant witnesses to this action actually live and work in North Carolina. Barr's sister company, Microban International, Ltd., [is] located in this State and District, in Huntersville, NC, such that several Barr employees also reside and work here, and its Board meets annually here." (Doc. No. 26, p. 18).  The Court finds it wholly irrelevant that a "sister company" is located in this District, and—as explained below—the fact that approximately six witnesses reside and work here is but one factor to consider as part of the Court's analysis.

11

Plaintiff does not identify any business reason why it chose this forum. Nothing in the record suggests Plaintiff developed the trademarked product or packaging in North Carolina, and only limited information appears before the Court as to the parties' relevant sales of the product here. Notably, Defendant maintains the sales of the allegedly infringing product sold here represent only 3% of its sales nationwide. Defendant does not have any North Carolina distributors or retailers of the allegedly infringing product, and it does not conduct business directly to North Carolina consumers.

Plaintiff's choice of forum is certainly entitled to some weight, as it may be slightly less convenient for Plaintiff to prosecute its claims in Pennsylvania than in North Carolina. However, the weight given to Plaintiff's choice is diminished because its chosen forum is foreign to both parties, and the causes of action asserted here bear at least the same relation to this forum as they do to almost any other forum in the nation. This Court is unpersuaded that the cause of action bears more than little relation to North Carolina and this District. Therefore, the Court agrees that Plaintiff's choice of forum in this case should be accorded diminished weight. Accordingly, the Court assigns some weight to the Plaintiff's chosen forum but finds that because this is a foreign forum for both parties and only minimal—if any—business is conducted here by the parties, this factor is neutral at best. See SAS Inst., Inc. v. World Programming Ltd., 468 F. App'x 264, 265–66 (4th Cir. 2012) ("a citizen's forum choice is not dispositive") (citing Piper Aircraft, 454 U.S. at 255 n. 23, 102 S.Ct. 252).

2.    Convenience of the Parties, including Residence of the Parties and Relative Ease of Access of Proof

Neither party is incorporated in North Carolina, nor do they have their principal places of business in North Carolina. As explained above, this Court lacks personal jurisdiction over

12

Defendant, and all of its business operations relevant to Plaintiff's claims in this case appear to take place or have taken place in Pennsylvania. In considering the convenience of the parties, this factor strongly favors transfer to the Eastern District of Pennsylvania. As for ease of access of proof, given the nature of this case, discovery is likely to be electronic.

3.   Witness Convenience, including Availability of Compulsory Process for Attendance of Witnesses and the Cost of Obtaining Attendance of Willing Witnesses and Possibility of a View

Neither party resides in this District. Thus, each party would have to transport its own witnesses to the Western District of North Carolina if trial were held here, although Plaintiff indicates approximately six of its witnesses reside in the area. As noted above, Defendant does not have any North Carolina distributors or retailers for the allegedly infringing product. Defendant also indicates that its employees involved with the development, marketing, advertising, and sale—as well as the business records associated therewith—of the allegedly infringing product and packaging are located in Pennsylvania and California. Given the nature of the claims against Defendant, the Court finds that Plaintiff's handful of witnesses residing in North Carolina do not tip the balance to weigh against transfer. Thus, this factor is neutral.

The other factor related to convivence of the parties is also neutral. A jury will likely need to view both parties' products to resolve the claims at issue here. Based on the record before the Court, the products appear to be easily transportable. Accordingly, the products may be viewed in any district in the country.

4.   Interests of Justice, including the Relative Advantages and Obstacles to a Fair Trial; Other Practical Problems that Make a Trial Easy, Expeditious, and Inexpensive; Administrative Difficulties of Court Congestion; Interest in Having Localized Controversies Settled at Home; and Avoidance of Unnecessary Problems with Conflict of Laws

Here, the Court summarily concludes the majority of these factors are neutral, with the exception of the interest in having localized controversies settled at home. This factor heavily favors transfer. Indeed, the gravamen of Plaintiff's complaint is that Defendant knowingly and intentionally infringed on its trade dress and trademark. Defendant explains that all activity surrounding the development of the allegedly infringing product and packaging took place in Dowingtown, Pennsylvania. Other than asserting that Defendant has made sales of the allegedly infringing product in North Carolina, Plaintiff has not alleged any facts indicating this is a localized controversy. And, other than a general allegation that a "substantial part of the events" giving rise to Plaintiff's claims occurred in this District,[1] nothing in the Complaint or other pleadings[2] indicates North Carolina customers have been impacted by the parties' controversy. And nothing in Plaintiff's pleadings appear to suggest that *Plaintiff* developed its product in North Carolina. Without allegations of North Carolina-specific conduct, the causes of action here could conceivably be "localized" in any district in the country, but more localized where Defendant developed the product and its packaging and managed the sale of that product. Accordingly, settling this matter where the controversy is local favors transfer to the Eastern District of Pennsylvania. The Court agrees with Defendant's representations regarding relative court congestion and enforceability of a judgment also slightly favor transfer.

---

[1] The Court notes that Plaintiff's Complaint alleges that "a substantial part of the events giving rise to American Frame's claims occurred in the Western District of North Carolina." (Doc. No. 1, p. 3). The Court assumes this typographical error was meant to reference the named Plaintiff W.M. Barr Company, Inc., and that Plaintiff intended to assert that a "substantial part of the events" giving rise to Plaintiff's claims occurred in this District.

[2] Plaintiff correctly argues that this Court has a strong interest in adjusting claims involving the confusion of customers and unfair business practices in North Carolina; however, Plaintiff has directed the Court to nothing in the current record to indicate that type of misconduct is occurring in this State. For example, Plaintiff's Motion for Preliminary Injunction references "Actual Confusion" evidenced by two "Amazon reviews," but nothing indicates these reviews were from North Carolina customers. (Doc. No. 8, p. 21).

In sum, while several factors are neutral at best, the Court finds that Plaintiff's choice of forum is outweighed by the reasons favoring transfer.  Defendant has carried its heavy burden here to demonstrate this case should be transferred to the Eastern District of Pennsylvania for the convenience of parties and witnesses and in the interest of justice.

IV.     Conclusion

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss or Alternatively to Transfer, (Doc. No. 14), is DENIED IN PART AND GRANTED IN PART.  This case shall be transferred to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404 for such further proceedings as that court may deem appropriate.  In so ruling, the Court declines to rule on the pending Motion for Preliminary Injunction and directs the Clerk of Court to terminate the hearing scheduled for Monday, December 12, 2022.

IT IS SO ORDERED.

Signed: December 9, 2022

Frank D. Whitney
United States District Judge